# EXHIBIT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| **Computershare Trust Company, National Association, as Trustee, on behalf of the Registered Holders of BMO 2024-5C5 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2024-5C5 and the Uncertificated Interest Owners,**<br><br>Plaintiff,<br><br>-against-<br><br>**Starwood Mortgage Capital LLC,**<br><br>Defendant. | Index No. __-____<br><br>**SUMMONS** |

**TO THE ABOVE-NAMED DEFENDANT**:

YOU ARE SUMMONED, to answer the complaint in this action, and to serve a copy of your answer, or, if the summons is not served with a complaint, to serve a notice of appearance, on the Plaintiffs' attorney within twenty (20) days after service of this summons, exclusive of the day of service, or within thirty (30) days after completion of service where service is made in any other manner than by personal delivery within the State. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Plaintiff designates New York County as the place for trial. Venue is proper in this Court pursuant to CPLR 501 based on a contractual forum selection clause.

Dated: New York, New York
September 4, 2026

**TROUTMAN PEPPER LOCKE LLP**

By: *s/ David E. Fialkow*
David E. Fialko
111 Huntington Avenue, 9th Floor
Boston, MA 02199

Tel: (617) 443-3709
David.fialkow@troutman.com

Christopher Fontenelli
875 Third Avenue
New York, NY 10022
Tel: 212.704.6000
Christopher.Fontenelli@troutman.com

*Attorneys for Computershare Trust Company, National Association, as Trustee, on behalf of the registered Holders of BMO 2024-5C5 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2024-5C5 and the Uncertificated Interest Owners*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| **Computershare Trust Company, National Association, as Trustee, on behalf of the Registered Holders of BMO 2024-5C5 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2024-5C5 and the Uncertificated Interest Owners,**<br>Plaintiff,<br>-against-<br>**Starwood Mortgage Capital LLC,**<br>Defendant. | Index No. __-____<br>**COMPLAINT** |

Plaintiff Computershare Trust Company, National Association, as Trustee, on behalf of the registered Holders of BMO 2024-5C5 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2024-5C5 and the Uncertificated Interest Owners (the "***Trust***"), for its complaint against Starwood Mortgage Capital LLC ("***Starwood***") alleges as follows:

## PRELIMINARY STATEMENT

Starwood originated and sold the Trust a commercial mortgage loan (the "***Mortgage Loan***") under a Mortgage Loan Purchase Agreement (the "***MLPA***").[1] Starwood represented and warranted that the Mortgage Loan was secured by a legal, valid, and enforceable first-priority Mortgage on the Mortgaged Properties. Starwood's representations, however, were false because a third party already held a senior mortgage on the Mortgaged Properties thereby rendering the

[1] A true and correct copy of the MLPA is attached hereto as Exhibit A. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the MLPA

Mortgage Loan documents unenforceable and the Mortgage Loan a Defective Mortgage Loan under the MLPA. As a result, when the senior mortgage lienholder foreclosed, it wiped out the lien of the Mortgage Loan, leaving the Trust with an unsecured Mortgage Loan and a title insurance claim that cannot make it whole. Starwood's misrepresentations about the Mortgage Loan materially breached the MLPA. Despite receiving proper notice of a Material Defect under the MLPA, Starwood failed and refused to repurchase the loan. The Trust brings this action for breach of contract, to enforce the MLPA, and to require Starwood to repurchase the Mortgage Loan.

## THE PARTIES, VENUE AND JURISDICTION

1. The Trust is a common law trust formed under the laws of the State of New York.

2. The Trust acts by and through CWCapital Asset Management LLC, as its Special Servicer (the "***Special Servicer***"), authorized agent, and attorney in fact.

3. The Trust's trustee, Computershare Trust Company, National Association, is a national banking association with its main office located in Massachusetts.

4. On information and belief, Starwood is a Delaware limited liability company with its principal place of business in Miami Beach, Florida.

5. This Court has jurisdiction over this action, and venue is proper in this Court because the MLPA was negotiated and executed in New York, and under the MLPA, the parties irrevocably submitted to the jurisdiction of the courts of the state of New York in New York County for any action or proceeding relating to the MLPA.

## THE MORTGAGE LOAN AND THE LOAN SALE

6. Starwood originated the Mortgage Loan on or about April 18, 2024, in the original principal amount of $46,850,000.00, which Mortgage Loan is evidenced, governed, and secured by certain documents (collectively, the "***Mortgage Loan Documents***").

7. On or about August 1, 2024, Starwood and the Trust's Depositor, BMO Commercial Mortgage Securities LLC, entered into the MLPA.

8. Pursuant to the MLPA, Starwood agreed to sell certain commercial mortgage loans specified on Exhibit A to the MLPA, including the Mortgage Loan, to the Depositor for deposit into the Trust Fund created pursuant to the terms of the Pooling and Servicing Agreement.

9. Under Section 1 of the MLPA, Starwood sold the Mortgage Loan to the Depositor on the Closing Date (the "***Loan Sale***"), and as consideration, the Depositor paid Starwood the Purchase Price set forth on the funding schedule. The Mortgage Loan is identified as Loan 11 on Exhibit A to the MLPA, as "The Pointe & Oak Shadows."

10. At the time of the Loan Sale, the Mortgage Loan was secured by (i) a certain Deed of Trust, Assignment of Leases and Rents and Security Agreement (the "***Starwood DOT***") encumbering two separate properties located in Harris County, Texas - The Pointe and Oak Shadows, as identified on Exhibit A to the MLPA as Property 11.01 and 11.02 respectively (together, the "***Mortgaged Properties***") and (ii) an Assignment of Leases and Rents (the "***Starwood ALR***") encumbering the leases and rents arising from the Mortgaged Properties.

11. In connection with the Loan Sale, and in accordance with the MLPA and the Pooling and Servicing Agreement, Starwood executed certain assignments and endorsements transferring all of its right title and interest in the Mortgage Loan and the Mortgage Loan Documents to the Trust and delivered the Mortgage File to the Trust.

12. The Trust is the current owner and holder of the Mortgage Loan and the Mortgage Loan Documents and is entitled to enforce the MLPA against Starwood.

## BREACHES OF THE MLPA

13. To induce the Depositor to enter into the MLPA, Starwood made certain representations and warranties regarding the Mortgage Loan for the benefit of the Trust and Depositor, as set forth in Section 6(c) and Exhibit B to the MLPA (such representations and warranties, the "***R&Ws***").

14. The Depositor relied upon the R&Ws when entering into the MLPA.

15. Most relevant here, Starwood represented and warranted that the Starwood DOT is a legal, valid, and enforceable first lien on the Mortgaged Properties and that the Mortgage Loan Documents are enforceable in accordance with their terms.

16. In reality, however, the Starwood DOT was never a valid and enforceable first lien on the Mortgaged Properties and the provisions of the Starwood DOT and the Starwood ALR were not enforceable against the related Mortgagor (together, such defects as further described below, the "***Material Defect***").

17. Prior to the origination of the Mortgage Loan, the Mortgaged Properties were already encumbered by a $27,601,000.00 Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing for the benefit of Thistle Creek Partners, LP ("***Thistle Creek***"), recorded in the official records of Harris County, Texas (the "***Thistle Creek DOT***").

18. Thistle Creek enforced the power of sale in the Thistle Creek DOT against the Mortgaged Properties, conducted a state law non-judicial foreclosure, and took title to the Mortgaged Properties through one or more affiliates (the "***Foreclosure***").

19. The Mortgage Loan Documents gave the Trust no legal or enforceable rights to stop the Foreclosure, enter the property, collect rents, or to appoint a receiver to protect its interests in the Mortgaged Properties.

20. The Foreclosure wiped out the liens of the Starwood DOT and the Starwood ALR, leaving the Mortgage Loan unsecured by any real or personal property collateral owned by the obligors under the Mortgage Loan Documents.

21. R&W (2) on Schedule B of the MLPA provides in relevant part:

> Each related Mortgage Note, Mortgage, Assignment of Leases (if a separate instrument), guaranty and other agreement executed by or on behalf of the related Mortgagor, guarantor or other obligor in connection with such Mortgage Loan is the legal, valid and binding obligation of the related Mortgagor, guarantor or other obligor . . . , as applicable, and is enforceable in accordance with its terms . . . .

MLPA, Ex. B at ¶ (2)

22. R&W (3) on Schedule B of the MLPA provides in relevant part:

> The Mortgage Loan documents for each Mortgage Loan contain provisions that render the rights and remedies of the holder thereof adequate for the practical realization against the Mortgaged Property of the principal benefits of the security intended to be provided thereby, including realization by judicial, or if applicable, non-judicial foreclosure subject to the limitations set forth in the Standard Qualifications.

23. R&W (6) on Schedule B of the MLPA provides in relevant part:

> Each related Mortgage is a legal, valid and enforceable first lien on the related Mortgagor's fee (or if identified on the Mortgage Loan Schedule, leasehold) interest in the Mortgaged Property in the principal amount of such Mortgage Loan or allocated loan amount (subject only to Permitted Encumbrances (as defined below) and the exceptions to paragraph 7 below (each such exception, a "Title Exception")), except as the enforcement thereof may be limited by the Standard Qualifications. . . .

MLPA, Ex. B at ¶ (6)

24. R&W (7) on Schedule B of the MLPA provides in relevant part:

> Each Mortgaged Property securing a Mortgage Loan is covered by an American Land Title Association loan title insurance policy or a comparable form of loan title insurance policy approved for use in the applicable jurisdiction . . . (the "Title Policy") . . . that insures for the benefit of the owner of the indebtedness secured by the Mortgage, the first priority lien of the Mortgage . . . which lien is subject only to [list of permitted encumbrances in clauses (a) through (g)], provided that none of clauses (a) through (g), individually or in the aggregate, materially and adversely interferes with the value or principal use of the Mortgaged Property, the security intended to be provided by such Mortgage, or the current ability of the related

> Mortgaged Property to generate net cash flow sufficient to service the related Mortgage Loan or the Mortgagor's ability to pay its obligations when they become due (collectively, the "Permitted Encumbrances") . . . . Except as contemplated by clause (f) of the second preceding sentence none of the Permitted Encumbrances are mortgage liens that are senior to or coordinate and co-equal with the lien of the related Mortgage.

25. Starwood breached the MLPA because R&Ws (2), (3), (6) and (7) were false when made. Starwood also may have breached the MLPA based on other R&Ws, and the Trust reserves the right to identify and assert those additional breaches in the future as they are discovered.

26. Because there was a senior mortgage lien on the Mortgage Properties, neither the Starwood DOT nor the Starwood ALR were enforceable in accordance with their terms.

27. Because there was a senior mortgage lien on the Mortgage Properties, the Mortgage Loan Documents did not contain provisions that render the rights and remedies of the holder thereof adequate for the practical realization against the Mortgaged Properties of the principal benefits of the security intended to be provided thereby.

28. Because there was a senior mortgage lien on the Mortgage Properties, the Starwood DOT was not a valid and enforceable first lien on the Mortgaged Properties thereby breaching the R&Ws.

29. The exception in R&W (6) for recorded mechanics' or materialmen's liens that "are bonded over, escrowed for or insured against by the applicable Title Policy" does not save Starwood because the exception does not modify the broader, more fundamental requirement that the mortgage is a valid and enforceable first lien.

30. The existence of a Title Policy does not save Starwood from its misrepresentations because the Title Policy does not comply with the specifications of R&W (7). A senior mortgage is not a Permitted Encumbrance thereby rendering the coverage of the Title Policy inadequate to compensate the Trust for its loss.

31. The lien of the Starwood DOT was subject to a senior mortgage lien that materially and adversely interfered with the value of the Mortgaged Properties, the current ability of the related Mortgaged Properties to generate net cash flow sufficient to service the related Mortgage Loan, and the Mortgagor's ability to pay its obligations when they become due.

32. The Trust's Special Servicer, as the Enforcing Servicer, has determined that Starwood's breaches of the R&Ws constitute a Material Defect under the MLPA.

33. On or about May 26, 2026, the Enforcing Servicer gave written notice to Starwood of the Material Defect described above and demanded that Starwood cure the Material Defect, repurchase the Mortgage Loan, or substitute a Qualified Substitute Mortgage Loan in accordance with the MLPA (such notice, the "***Repurchase Notice***").

34. The Material Defect is not capable of being cured, leaving Starwood with two options under Section 6(e) the MLPA (i) repurchasing the Mortgage Loan at the defined Purchase Price or (ii) substituting a Qualified Substitute Mortgage Loan for the Mortgage Loan within 90 days of its receipt of the Repurchase Notice.

35. To date, despite its receipt of the Repurchase Notice in accordance with the MLPA, Starwood has failed and refused to fulfill its contractual obligation to repurchase the Mortgage Loan or substitute a Qualified Substitute Mortgage Loan, breaching the MLPA, and causing the Trust to incur damages in an amount no less than the Purchase Price.

## FIRST CAUSE OF ACTION
(Specific Performance)

36. The Trust realleges each and every allegation of the foregoing paragraphs of the Complaint as if fully restated herein.

37. The MLPA is a valid and enforceable contract.

38. Due to the Thistle Creek DOT, at a minimum, Starwood breached R&Ws (2), (3), (6), and (7) because: (i) the Mortgage Loan Documents did not contain provisions that render the rights and remedies of the holder thereof adequate for the practical realization against the Mortgaged Properties of the principal benefits of the security intended to be provided thereby, (ii) the Starwood DOT was not a legal, valid, and enforceable first lien on the Mortgaged Properties, (iii) the Mortgage Loan Documents did not contain provisions that render the rights and remedies of the holder thereof adequate for the practical realization against the Mortgaged Property of the principal benefits of the security intended to be provided thereby, and (iv) the lien of the Starwood DOT was subject to a senior mortgage lien that materially and adversely interfered with the value of the Mortgaged Properties, the current ability of the related Mortgaged Property to generate net cash flow sufficient to service the related Mortgage Loan, and the Mortgagor's ability to pay its obligations when they become due.

39. Starwood's breaches were material and have substantially and adversely affected the value of the Mortgage Loan, damaging the Trust.

40. The Trust has complied with all the terms of, and its obligations under, the MLPA.

41. Starwood has further breached the MLPA by failing and refusing to comply with its repurchase obligations specified in Section 6 of the MLPA, as more specifically set forth above.

42. The Trust is entitled to specific performance of the MLPA which requires Starwood to repurchase the Mortgage Loan at the Purchase Price or substitute a Qualified Substitute Mortgage Loan in accordance with the MLPA.

**SECOND CAUSE OF ACTION**
(Breach of Contract)

43. The Trust realleges each and every allegation of the foregoing paragraphs of the Complaint as if fully restated herein.

44. The MLPA is a valid and enforceable contract.

45. The Trust has complied with all the terms of, and its obligations under, the MLPA.

46. Due to the Thistle Creek DOT, at a minimum, Starwood breached R&Ws (2), (3), (6), and (7) of the MLPA.

47. Starwood's breaches were material and have substantially and adversely affected the value of the Mortgage Loan, damaging the Trust.

48. Starwood has further breached the MLPA by failing and refusing to comply with its repurchase obligations specified in Section 6 of the MLPA, as more specifically set forth above.

49. As a direct and proximate result of Starwood's breach, the Trust has been damaged in an amount to be proven at trial, but in no event less than the Purchase Price (including, among other things, the amounts set forth above).

## PRAYER FOR RELIEF

The Trust respectfully requests judgment in its favor and against Starwood as follows:

a. as to the First Cause of Action, enter an order requiring Starwood to promptly repurchase the Mortgage Loan at the applicable Purchase Price or substitute a Qualified Substitute Mortgage Loan, each as specified in Section 6 of the MLPA;

b. as to the Second Cause of Action, awarding the Trust compensatory damages in an amount to be determined at trial but no less than the Purchase Price;

c. awarding the Trust pre-judgment and post-judgment interest at the maximum rate allowed by law;

d. awarding the Trust its attorneys' fees and costs in this action; and

e. awarding the Trust such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 4, 2026

Respectfully submitted,

TROUTMAN PEPPER LOCKE LLP

*/s/ David E. Fialkow*

David E. Fialkow
111 Huntington Avenue, 9th Floor
Boston, MA 02199
Phone: (617) 443-3709
Email: david.fialkow@troutman.com

Christopher Fontenelli
875 Third Avenue
New York, NY 10022
Phone: (212) 912-2730
Email: christopher.fontenelli@troutman.com

*Counsel to: Computershare Trust Company, National Association, as Trustee, on behalf of the registered Holders of BMO 2024-5C5 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2024-5C5 and the Uncertificated Interest Owners*